UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>ELIAS GRAHAM,<br><br>Defendant. | CASE NO. CR20-156RSM<br><br>ORDER DENYING DEFENDANT'S MOTION TO REVOKE DETENTION ORDER OR, IN THE ALTERNATIVE, FOR TEMPORARY RELEASE |

## I.   INTRODUCTION

This matter comes before the Court on Defendant Elias Graham's motion for review and revocation of a detention order or, in the alternative, for temporary release. Dkt. #98. Neither party has requested oral argument, and the Court finds it unnecessary to resolve the issues. Having considered Defendant's motion, the Government's response, and the remainder of the record, the Court DENIES Defendant's motion for the reasons set forth below.

## II.   BACKGROUND

On September 17, 2020, a Grand Jury indicted nine defendants, including Mr. Graham, for multiple counts of bank fraud, 18 U.S.C. § 1343, and aggravated identity theft, 18 U.S.C. § 1028A, related to a scheme for creating and cashing counterfeit payroll checks from Kroger Company and its subsidiaries. Dkt. #20. Between March 2019 and February 2020, the

ORDER DENYING DEFENDANT'S MOTION TO REVOKE DETENTION ORDER OR, IN THE ALTERNATIVE, FOR TEMPORARY RELEASE – 1

defendants allegedly traveled to over 300 Kroger-owned stores in 22 states to cash more than 500 counterfeit Kroger payroll checks. As part of the scheme, defendants allegedly used the identity of other persons without permission. Trial is currently set for June 7, 2021. Dkt. #95.

In addition to the alleged offense in the instant matter, the Government is currently investigating Mr. Graham as a main suspect for a shooting incident occurring inside a Target store in Renton, Washington in July 2020. Dkt. #100 at 5. During a dispute among multiple individuals in the store, a male suspect walked by the victim and shot three rounds in the victim's direction. *Id.* A couple trying to flee the Target shooting in their car claimed that a male stopped them and asked for a ride. Dkt. #97 at 9:18-25. During the drive, the man asked to use their phone and placed a call without having a conversation. *Id.* at 10:1-15. The couple dropped the man off in the Skyway area two blocks from Mr. Graham's last known residence. *Id.* at 11:9-12. The Government claims that the phone number the man called was connected to Mr. Graham. *Id.* at 11:1-8. In a photo line-up, one member of the couple identified with 50 to 60% certainty that the man they picked up in their car was Mr. Graham, while the other member "could not really pick out any person." *Id.* at 10:22-25; 11:1-3. No charges have been filed. Dkt. #98 at 7.

On November 3, 2020, the Government moved for pretrial detention of Mr. Graham under 18 U.S.C. § 3142(e) and (f) citing serious flight risk and danger to other people and to the community. Dkt. #81. On November 4, 2020, the Honorable Mary Alice Theiler, United States Magistrate Judge, ordered Mr. Graham detained pending trial after a contested detention hearing. Dkt. #88. Judge Theiler concluded that Mr. Graham poses a flight risk based on unstable employment and residence and alleged attempts to elude arrest. *Id.* at 2. Judge Theiler further concluded that Defendant poses a danger based on the nature and circumstances of the offense and allegations related to the July 2020 Target shooting.

ORDER DENYING DEFENDANT'S MOTION TO REVOKE DETENTION ORDER OR, IN THE ALTERNATIVE, FOR TEMPORARY RELEASE – 2

On December 23, 2020, Mr. Graham filed the instant motion for review of Judge Theiler's detention order pursuant to 18 U.S.C. § 3145(b). Dkt. #98. Mr. Graham moves for release on the basis that Judge Theiler ordered him "detained based primarily on superficial evidence for an uncharged state-law offense" unrelated to the charges he faces under this indictment. *Id.* at 1.

### III.   DISCUSSION

**A. Standard of Review for Revocation of Detention Order**

The Court reviews a magistrate judge's order detaining a defendant before trial *de novo*. 18 U.S.C. § 3145(b); *see also United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). Accordingly, the district court reviews the evidence that was before the magistrate judge and any additional evidence proffered by the parties in order to "make its own independent determination whether the magistrate's findings are correct with no deference." *Id.* at 1193.

A defendant may be detained before trial only if "no condition or combination of conditions will reasonably assure the [defendant's] appearance . . . and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The Government bears the burden of proving by a preponderance of the evidence that no conditions will reasonably assure the defendant's appearance and by clear and convincing evidence that no conditions will reasonably assure the safety of the community. *United States v. Motamedi*, 767 F.2d 1403, 1406–07 (9th Cir. 1985). When analyzing whether conditions can reasonably assure the defendant's appearance and the safety of the community, the Court must consider (1) the nature and circumstances of the offense charged, (2) the weight of the evidence, (3) the history and characteristics of the defendant, and (4) the danger to the community the defendant would pose if released. 18 U.S.C. § 3142(g).

Having considered the factors under 18 U.S.C. § 3142(g), the Court concludes that the magistrate judge erred in finding that no conditions of release will reasonably assure the safety of the community given Mr. Graham's danger to others or to the community. However, because the Government has demonstrated by a preponderance of the evidence that Mr. Graham poses a flight risk and that no conditions of release will reasonably assure his appearance, Defendant's motion for revocation of his detention order should be denied.

i. Nature and Circumstances of the Offense Charged

Mr. Graham is accused of participation in a scheme that involved interstate travel to cash counterfeit payroll checks. This includes traveling to five states—Oregon, Arizona, Indiana, Kansas, and Nebraska—in the span of one month. *See* Dkt. #1 at 22. The Court finds that the nature and circumstances of the underlying offense, which required frequent travel outside this jurisdiction in combination with use of stolen or fictitious identities, raise legitimate concerns as to Mr. Graham's flight risk.

ii. Weight of the Evidence

The Court next considers the weight of the evidence against Mr. Graham. This factor is the least important. *Motamedi*, 767 F.2d at 1404. In assessing the weight of the evidence, a court may not make a pretrial determination of guilt. *Id.* at 1408. Rather, it must consider the weight of the evidence "only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community." *Id.* Even when the evidence strongly weighs in favor of conviction, release is still appropriate if the community's safety and future appearances before the Court can be "reasonably assured" by release conditions. *Id.*

Mr. Graham was listed as the payee on approximately 24 counterfeit payroll checks. Investigators identified Graham based on surveillance video and photographs during transactions

ORDER DENYING DEFENDANT'S MOTION TO REVOKE DETENTION ORDER OR, IN THE ALTERNATIVE, FOR TEMPORARY RELEASE – 4

in Oregon, Arizona, Indiana, Kansas, and Nebraska. Dkt. #1 at 22. During a transaction in Indiana on April 30, 2019, an employee took a photocopy of Mr. Graham's Washington driver's license next to the counterfeit check. *Id*. Counterfeit payroll checks bearing the logo of Jay C Foods Stores were also recovered in Mr. Graham's possession during the investigation. *Id.* at 10.

Without making any determination as to Mr. Graham's guilt, the Court acknowledges the strength of the evidence against him. This factor therefore weighs against pretrial release.

iii. Mr. Graham's History and Characteristics

Consideration of a defendant's history and characteristics includes "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3).

Defendant maintains that he has strong ties in this district by nature of living in Seattle most of his life, the residences of his close and extended family, and the recent birth of his son. Dkt. #98 at 3. However, Mr. Graham has been unemployed since November 2019 and reports no income or assets, and states that he is "generally" supported by his girlfriend. Dkt. #82 at 1-2. He does not appear to have a stable residence. Although he provided Pretrial Services with a permanent address at his aunt's residence, he stated that he has been living with his child's mother at a different address for approximately a year. *Id.* at 2. However, he claims that he no longer wishes to reside with his child's mother, and that she is in the process of relocating. *Id.* The Court finds that Mr. Graham's lack of employment, financial situation, and lack of stable residence create a substantial risk of non-appearance.

Furthermore, while Mr. Graham has no prior criminal convictions, the Government proffered evidence at the November 3, 2020 detention hearing that Mr. Graham attempted to elude arrest for the underlying conviction. Dkt. #100 at 5.[1] The proffered evidence states that investigators received an anonymous tip on Defendant's location, arrived at the location, and observed Mr. Graham jumping out a window and fleeing. *See* Dkt. #97 at 12:7-16. Mr. Graham challenges the Government's evidence as "scant" for failing to provide more detail on the alleged arrest attempt, and argues that the details provided do not "amount to a preponderance of the evidence that the incident happened as described or that Mr. Graham was involved." Dkt. #98 at 5. However, he has proffered no evidence of his own that credibly challenges the Government's proffer. *See United States v. Cabrera–Ortigoza,* 196 F.R.D. 571, 575 (S.D. Cal. 2000) ("[A]bsent something credible to challenge the reliability or correctness of the government's proffer, the Court need not compel live witnesses to testify.").

Accordingly, having considered Mr. Graham's lack of employment since November 2019, financial situation, lack of stable residence, and the Government's proffered evidence of Mr. Graham's attempt to evade arrest, the Court finds that the risk of non-appearance is supported by a preponderance of the evidence. Because his history and characteristics cannot be mitigated by less restrictive conditions than detention, the Court finds that pretrial release of Mr. Graham is not appropriate in light of this factor.

//

//

---

[1] At a detention hearing, the government and defendant may both proceed "by proffer or hearsay." *United States v. Winsor,* 785 F.2d 755, 756 (9th Cir. 1986) (per curiam); *see also United States v. Cabrera–Ortigoza,* 196 F.R.D. 571, 575–76 (S.D. Cal. 2000) ("The use of proffers and hearsay evidence are a necessary ingredient to the effective working of the Bail Reform Act, and prevention of a mini trial, or an early discovery expedition[,] further facilitates those goals.").

### iv. Danger to the Community

Finally, the Court considers the nature and seriousness of the danger to any person or the community that would be posed by Mr. Graham's release. 18 U.S.C. § 3142(g)(4). Mr. Graham is accused of participation in a bank fraud scheme. Considering that he has no income or assets, Mr. Graham poses a risk of economic danger based on the nature of the alleged offense. However, the Government has not shown by clear and convincing evidence that additional conditions of release would not mitigate this danger. *Cf. United States v. Childress*, No. 3:16-CR-2556-GPC, 2017 WL 6406636, at *7 (S.D. Cal. Dec. 15, 2017) (Finding clear and convincing evidence of "economic danger" where defendant had "serious record of defrauding members of the community, particularly when under the supervision of a federal court" and "ha[d] proven himself capable of avoiding detection when engaging in this fraudulent behavior, even when under such supervision.").

In addition to the underlying charges, the Government argues that Mr. Graham's alleged involvement in the July 2020 Target shooting demonstrates the risk to the community posed by Mr. Graham's release. Dkt. #100 at 5. Mr. Graham contends that the Government's evidence amounts to speculation and unsupported inference. Dkt. #101 at 3. Specifically, he points out that the security footage only shows a masked Black man in a generic sweat suit, while the phone call evidence "more reliably supports the conclusion that Mr. Graham was the intended recipient of the call" compared to the Government's theory that Mr. Graham was looking for his own phone. *Id.*

The Court agrees that the evidence related to this ongoing investigation—a man, later identified with 50 to 60% percent certainty as Mr. Graham, picked up from the vicinity of the Target store and dropped off within two blocks of Defendant's last known permanent address,

ORDER DENYING DEFENDANT'S MOTION TO REVOKE DETENTION ORDER OR, IN THE ALTERNATIVE, FOR TEMPORARY RELEASE – 7

who placed a phone call to a number connected to the Defendant—together provides "uniquely circumstantial evidence" that raises concerns as to Mr. Graham's release. *See* Dkt. #97 at 16:1-7. However, it cannot conclude that these findings amount to clear and convincing evidence that Mr. Graham poses a danger to others or the community if released, and that no conditions of release would mitigate this danger. *See* 18 U.S.C. § 3142(f)(2)(B).

       v.       Analysis of Statutory Factors

Having considered the statutory factors under 18 U.S.C. § 3142(g), the Court concludes that the Government has not demonstrated by clear and convincing evidence that no conditions will reasonably assure the safety of others or the community. However, considering the nature and circumstances of the alleged offense, the weight of the evidence, and the Defendant's history and characteristics, the Government has met its burden of showing by a preponderance of the evidence that no conditions will reasonably assure Mr. Graham's appearance. Accordingly, pretrial release is not appropriate.

**B. Temporary Release**

Mr. Graham also moves the Court for temporary release under 18 U.S.C. § 3142(i) due to the COVID-19 pandemic. Dkt. #98 at 8-9. Under Section 3142(i), temporary release may be granted if the Court determines that release is "necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i)(4). The relief authorized by § 3142(i) is to be used "sparingly." *United States v. McKnight*, 2020 WL 1872412 at *2-3, CR18-16-TSZ (W.D. Wash. Apr. 15, 2020). In analyzing Section 3142(i) motions for temporary release due to the COVID-19 pandemic, courts in this district have considered four factors: (i) the original grounds for the defendant's pretrial detention, (ii) the specificity of the defendant's stated COVID-19 concerns, (iii) the extent to which the proposed release plan is tailored to mitigate,

ORDER DENYING DEFENDANT'S MOTION TO REVOKE DETENTION ORDER OR, IN THE ALTERNATIVE, FOR TEMPORARY RELEASE – 8

rather than exacerbate, the COVID-19 risks to the defendant, and (iv) the likelihood that the defendant's release would increase the COVID-19 risks of others. *McKnight*, 2020 WL 1872412 at *2–3 (citing *United States v. Clark*, 448 F. Supp. 3d 1152, 1157 (D. Kan. 2020)).

Mr. Graham is currently confined at the Federal Detention Center ("FDC SeaTac") and tested positive for COVID-19 in mid-December. Dkt. #98 at 3. He claims that temporary release is warranted due to the danger posed by the COVID-19 virus, as well as impediments the virus has created to Mr. Graham's communication with counsel to prepare his defense. *Id.* at 8. The Court finds that neither of his stated concerns supports temporary release.

First, the Court is cognizant of the risk that COVID-19 poses to certain individuals who are detained or incarcerated. However, as courts in this district have found, "the risk posed by COVID-19 does not justify releasing every person who is detained pending trial or sentencing." *United States v. Carrillo Lopez*, No. MJ20-0020-JCC, 2020 WL 3414674, at *5 (W.D. Wash. June 22, 2020) (collecting cases). Here, Defendant has presented no medical evidence demonstrating that he is a member of an at-risk population. While his pretrial services report states that he suffers from hyperthyroid and hypertension and is taking medication for both, Dkt. #82, neither of these conditions place him in the category of individuals who "are at increased risk of severe illness" from COVID-19. *See* U.S. Ctrs. for Disease Control and Prevention, *Coronavirus Disease 2019-COVID*, *People with Certain Medical Conditions,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated December 29, 2020).[2] The Court is not convinced that the

---

[2] Pursuant to Fed. R. Evid. 201(c)(1), the Court takes judicial notice *sua sponte* of public records related to the COVID-19 health crisis, including documents available through government agency websites. *Gustavson v. Wrigley Sales Co.*, No. 12-CV-01861-LHK, 2014 WL 60197, at *3 (N.D. Cal. Jan. 7, 2014).

ORDER DENYING DEFENDANT'S MOTION TO REVOKE DETENTION ORDER OR, IN THE ALTERNATIVE, FOR TEMPORARY RELEASE – 9

pandemic constitutes a significant enough risk to Mr. Graham's health to warrant release given the reasons for ordering detention.

Mr. Graham also argues that his ability to communicate with counsel has been "constitutionally inadequate" to prepare his defense. Dkt. #98 at 8. He claims that it took counsel a week to locate Mr. Graham, due in part to the fact that he is under 21 and the Bureau of Prisons would not release his custody placement. *Id.* at 2. It took counsel several more days for counsel to speak with Mr. Graham, with the only other direct conversation occurring "about two weeks later." *Id.* at 3. A third video conference was scheduled and canceled by BOP, and Mr. Graham claims he was not permitted to make legal calls since arriving to FDC SeaTac. *Id.* The Government responds that given the recent spike in the FDC's COVID-19 cases, FDC SeaTac temporarily suspended bringing telephones to inmates who tested positive for COVID-19 until January 4, 2021. Dkt. #100-1 at ¶ 6. This suspension did not prohibit inmates from sending and receiving legal mail, which typically arrives within 48 hours. *Id.* at ¶ 7. The temporary suspension of routine legal phone calls also excluded urgent matters that could not be delayed until January 4 or handled by mail. *Id.* at ¶ 6. Mr. Graham does not dispute any of these points. *See generally* Dkt. #101. For these reasons, the Court finds Mr. Graham's claim that communication with counsel is "constitutionally inadequate" to be conclusory and unsupported.

Turning to the remaining factors, the grounds for Mr. Graham's pretrial detention based on flight risk is not altered by the COVID-19 health crisis. With respect to his proposed release plan, allowing Defendant to live with his aunt would likely reduce his risk compared to the communal environment of the FDC. However, his lack of stable residence and risk of flight raise countervailing concerns as to the increased risk of COVID-19 that Mr. Graham poses to the community if released pending trial.

ORDER DENYING DEFENDANT'S MOTION TO REVOKE DETENTION ORDER OR, IN THE ALTERNATIVE, FOR TEMPORARY RELEASE – 10

Accordingly, with three of the four factors weighing strongly against release, the Court finds that temporary release under 18 U.S.C. § 3142(i) due to the COVID-19 crisis is not appropriate here.

### IV.     CONCLUSION

Having reviewed the briefing, along with the remainder of the record, the Court hereby finds and ORDERS that Mr. Graham's motion to revoke his detention order under 18 U.S.C. § 3145(b) or, in the alternative, for temporary release under 18 U.S.C. § 3142(i), is DENIED.

The Clerk shall provide a copy of this Order to Judge Theiler.

DATED this 8th day of January, 2021.

_____
RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE